1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

WATERFALL, ECONOMIDIS, CALDWELL,
  HANSHAW & VILLAMANA, P.C.
Williams Centre, Suite 800
5210 E. Williams Circle
Tucson, AZ 85711-4482
(520) 745-7810

Barry Kirschner/SBN 005592
bkirschner@wechv.com
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Ruben R. Urbina,<br>    Plaintiff,<br><br>vs.<br><br>Life Insurance Company of North<br>  America, and Loomis, Fargo & Co.,<br>    Defendants. | No.:<br><br>**COMPLAINT** |

Plaintiff Ruben R. Urbina ("Urbina") alleges:

1.    Urbina is a participant and claimant in the Loomis, Fargo & Co. Plan ("Loomis Plan").

2.    Defendant Life Insurance Company of North America ("LINA"), is the Claim Administrator of a disability benefit plan governed pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U. S.C. § 1132.

3.    Defendant LINA is an insurance company which agreed to provide benefits and perform as the Claim Administrator of the Loomis Plan.

4.    Urbina is an intended beneficiary and participant of the protections of the Loomis Plan as administered through LINA.

5.    The United States Congress described its purpose in enacting ERISA in 1974:

> "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards

of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA § 2, 29 U.S.C. § 1001(b)

6.     Urbina was born April 6, 1966.

7.     Urbina is a high school graduate without further formal education

8.     Urbina was employed as a Armored Service Technician for Loomis armored car service from 1993 to 2010.

9.     As part of his occupational responsibilities, Urbina wore a uniform, and carried a weapon while on the job.

10.    Urbina received annual training relating to how to discharge his firearm in connection with his occupational responsibilities.

11.    The firearms training included maneuvers where he would have to move quickly, stoop to a new position, and accurately discharge the firearm.

12.    The job description for Urbina's position includes the ability to push/pull dollies/carts loaded with cargo weighing up to several hundred pounds by cart.

13.    The occupational requirements also include the need to lift and carry 50 pounds.

14.    The occupational requirements also include sitting in the armored car with a minimum of 30 stops per day, 4-5 hours, 5-6 days per week.

15.    The occupational requirements also include the ability to repeatedly perform heavy lifting and carrying items by hand in an unrestricted manner for significant distances (several yards).

16.    The occupational requirements also include unrestricted ability to bend, stoop, squat, stand, walk, climb, twist, turn, and reach out.

17.    The occupational requirements also include exposure to wet and dry conditions, extreme heat and cold, constant vehicle and traffic noise, and possibly gasoline/diesel fumes.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

2

*Urbina v. Life Ins Co of N. America, et al.*
CV New

18.   Urbina has not worked since September 2010.

19.   In and since September 2010, Urbina has suffered from symptoms diagnosed as degenerative disc disease ("DDD").

20.   In and since September 2010, Urbina has suffered from symptoms diagnosed as radiculopathy.

21.   In September 2010, Urbina weighed approximately 450 pounds.

22.   Urbina's treating physician, James H. Reifschneider ("Dr. Reifschneider") informed LINA that, in addition to DDD and radiculopathy, he considered Urbina to have life threatening obesity.

23.   Urbina's treating physician, Dr. Reifschneider informed LINA that Urbina was not fit to lift over 10 pounds.

24.   Urbina's treating physician, Dr. Reifschneider informed LINA that he considered Urbina was not fit to push or pull more than 10 pounds.

25.   Dr. Reifschneider advised LINA that the recommendations against lifting, pushing, or pulling were supported by clinical finding.

26.   LINA denied Urbina's claim for disability benefits by letter dated March 17, 2011.

27.   LINA did not consult any medical doctor who supported its decision to deny the disability claim.

28.   LINA relied on Nurse Case Manager Jennifer Mazzone ("Mazzone") and or its employee (RN) Terry Williamson ("Williamson") for the medical basis to overrule Dr. Reifschneider's opinion that Urbina was disabled.

29.   Mazzone and Williamson (Mazzone/Williamson) never met or examined Urbina.

30.   No medical personnel who have personally met or examined Urbina have rendered an opinion that he has been able to continue in his occupation of Armored Service Technician since September 2010.

31.   LINA has not requested that Urbina engage in a functional capacity evaluation

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

3

Urbina v. Life Ins Co of N. America, et al.
CV New

1   ("FCE") at LINA 's expense to further determine his functional capacities.

2   32.   LINA has not requested that Urbina engage in an independent medical evaluation

3       ("IME") at LINA 's expense to further determine his functional capacities.

4   33.   In reaching the conclusion in support of denying Urbina's claim for disability

5       benefits, Mazzone/Williamson failed to defer to the restrictions from Dr.

6       Reifschneider that he not lift, carry, or push more than 10 pounds, even after

7       receiving evidence of the employer's occupational requirements to lift, carry and/or

8       push 50 pounds or more.

9   34.   In reaching the conclusion in support of denying Urbina's claim for disability

10       benefits, Mazzone/Williamson failed to consider the requirements of being able to

11       use a firearm safely during an emergency situation.

12   35.   Urbina filed an appeal with LINA on or about September 7, 2011.  That appeal is

13       attached as Exhibit 1 to this Complaint.

14   36.   The appeal established that Urbina's disability claim was valid.

15   37.   The appeal also established that LINA had acted in an indifferent and biased

16       manner in rejecting Urbina's claim.

17   38.   Among the deficiencies in how LINA evaluated the initial application for benefits

18       prior to its March 17, 2011 denial were:

19       a.   Failure to respect and give appropriate credibility to treating physician, Dr.

20           Reifschneider;

21       b.   Failure to obtain a medical doctor's opinion prior to rejecting Dr.

22           Reifschneider's conclusion that Urbina could not practice his occupation;

23       c.   Failure to analyze and compare the restrictions and limitations from Dr.

24           Reifschneider with the occupational description of Urbina's position by his

25           own employer; and

26       d.   Rejection of the importance of a significant combination of potentially

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

4

Urbina v. Life Ins Co of N. America, et al.
CV New

disabling conditions including DDD, radiculopathy, and morbid obesity.

39. Following receipt of Urbina's appeal, LINA acted in a biased manner in its evaluation of the merits of the appeal.

40. LINA again failed to obtain a personal examination of Urbina in connection with creation of its adverse decision on the appeal.

41. LINA again rejected the opinion of Dr. Reifschneider who performed personal examinations of Urbina in connection with the foundation of his opinion that Urbina was disabled from his occupation.

42. LINA retained a Dr. John Mendez ("Dr. Mendez"), believed to be a medical director for LINA, who rejected Dr. Reifschneider's conclusions regarding Urbina's disability.

43. Dr. Mendez has been recognized on multiple occasions by courts to be involved in biased decision making to deny a claim or appeal of a claimant.

44. In 2009, the Honorable Patrick J. Schiltz wrote:  "LINA did not behave toward MacNally as a fiduciary acting in his interests and the interests of plan participants. Rather LINA acted like a company whose goal was to deny MacNally's claim." 2009 WL 1458275 at p. 26 (In particular, there is no evidence that LINA's medical staff ever considered Ingenito's letter of February 19, 2007, in which Ingenito challenged Mendez's assessment that MacNally was capable of working.)

45. Similar to its handling discussed in *Salomaa v. Honda Long Term Disability Plan*, ___F.3d ___ (9th Cir. 2011),  2011 WL 768070  * at 8(C.A. 9 (Cal.)); the only documents with an "M.D." on the signature line concluding that he was not disabled were by the physicians the insurance company paid to review the file.  They never saw Salomaa."

46. In *Kreeger v. Life Insurance Company of North America*, 766 F.Supp.2d 991, 1001 (C.D. Cal. 2011), Dr. Mendez and LINA were criticized for selectively reviewing

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

5

*Urbina v. Life Ins Co of N. America, et al.*
CV New

medical data and focusing only on that portion of an examination which could support a conclusion that disability should be denied. The court noted that Mendez was LINA's in house physician and thus can hardly be considered an "independent reviewer."

47.   *Kreeger* noted that LINA made the contention, unsupported by the record, that it had taken steps to reduce potential bias.

48.   *Kreeger* concluded that Dr. Mendez did not make a reasoned assessment of the medical record. *Kreeger* at 1001.

49.   On information and belief, Dr. Mendez practices little or no medicine for actual patients as of 2010.

50.   On information and belief, Dr. Mendez receives a substantial portion of his income for services from reviewing insurance files for claimants applying for benefits or appealing denials of benefits.

51.   On information and belief, all, or almost all, of the money paid to Dr. Mendez is paid by insurance company(ies), and not by patients.

52.   On information and belief, Dr. Mendez, a medical director, participated in administrative meetings where profitability is associated with the frequency of denial of benefits or termination of claims.

53.   On information and belief, Dr. Mendez has a salary or benefit component related to the profitability of his employer.

54.   The salary or benefit component which relates to profitability is influenced by the frequency of denying claims for disability benefits or terminating benefits for those already recognized as disabled.

55.   LINA has no program to make certain that financial incentives to personnel or cooperating doctors or vendors do not instill (or further) bias in the claims determination process.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

6

*Urbina v. Life Ins Co of N. America, et al.*
CV New

56.     On information and belief, Dr. Mendez acts with a conflict of interest because of his desire for the security of a regular flow of income from LINA and/or other companies which ask him to perform similar tasks.

57.     In September and/or October 2011, Dr. Mendez issued a statement that Urbina's low back pain complaints of September 2010 were lacking ". . .time-concurrent documentation of significant measured physical limitation from 9/22/10-12/20/10 and from 12/21/10 forward."

58.     Because of the alleged absence of time concurrent documentation of measured physical limitations and/or functional deficits, Dr. Mendez concluded work restrictions from September 22, 2010 through October 31, 2011 were not supported.

59.     LINA's claim file records from March 15, 2011 note that Urbina suffered severe DDD, degenerative changes in weight bearing areas including the thoracic and lumbar spine, and suffered radicular pain.

60.     LINA's claim file also recognized in March 2011, under its title "Investigation Result," that, according to treating physician Dr. Reifschneider, there was an inability to do more than minimum range of motion studies because of radiculopathy and lumbar weakness.

61.     Dr. Mendez recognized that diagnostic studies from September 2010 confirmed spondylolisthesis and that Dr. Reifschneider's notes of September 2010 reflect radicular pain.

62.     Dr. Mendez places no functional significance to the morbid obesity of Urbina in his occupational analysis.

63.     Dr. Mendez expresses no analysis of why the combination of Urbina's spondylolisthesis, DDD, radiculopathy, and obesity do not establish the reasonableness of Dr. Reifschneider's work restrictions.

64.     The rejection of Urbina's appeal was for reasons which make no sense in context.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

7

Urbina v. Life Ins Co of N. America, et al.
CV New

65.   Among the statements made in the rejection of Urbina's appeal were:   "Mr. Urbina's medical records also contain X-rays of his lumbar spine, sacrum and coccyx which showed spondylolisthesis.   This is a chronic condition, found on studies in 2009, that by itself neither supports nor denies the presence of an impairment that would prevent him from performing his regular occupation.   Mr Urbina demonstrated a lack of significant impairment, by continuing to perform his regular occupation up until September 22, 2010, in light of his known medical conditions." See LINA's November 7, 2011 denial of appeal letter, Exhibit 2 to this Complaint

66.   LINA chose to ignore the fact that by September 2010, the DDD, radiculopathy, and spondylolisthesis had become symptomatic, causing Urbina to seek further medical help.

67.   A non-biased plan or claim administrator acting responsibly in the handling of a disability claim under ERISA fiduciary-like standards would not have rejected Urbina's claim, would not have rejected Urbina's appeal, and would not have fabricated false pretenses to attempt to justify the rejection of a valid claim.

68.   By September 23, 2011, LINA had embarked on a strategy to continue to reject the opinion of disability from treating Dr. Reifschneider because of an alleged absence of contemporaneous range of motion tests in or about September 2010.

69.   Dr. Reifschneider had previously indicated to LINA, no later then March 2011, there was an inability to perform range-of-motion studies because of the radicular pain and Urbina's lumbar weakness.

70.   In August 2011, Dr. Reifschneider did provide a flexion measurement.

71.   LINA rejected this measurement from Dr. Reifschneider because it was not time concurrent with the initial reports of disability.

72.   On September 23, 2011, LINA contacted counsel for Urbina to ask whether

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

8

Urbina v. Life Ins Co of N. America, et al.
CV New

1    physical therapy records existed.

2    73.   Urbina's counsel followed up the conversation with a letter, dated September 26,

3          2011 and attached as Exhibit 3 to this Complaint.

4    74.   LINA failed to engage an FCE, although counsel recommended that it would be

5          helpful if LINA was sincerely concerned about getting functional capacity

6          measurements.

7    75.   LINA failed to authorize an IME, although counsel recommended that if LINA

8          were sincerely concerned about the quality of Dr. Reifschneider's examination,

9          assessment, or treatment that it should get an IME..

10   76.   LINA, in other cases involving Dr. Mendez has rejected claims of disability by

11         failing to obtain independent assessments of physical limitations.  For instance, "In

12         this case, while there is a clear basis to question whether LINA's financial interest

13         may affect objectivity in deciding whether or not to terminate benefits, there is no

14         evidence that LINA made any effort to obtain an independent assessment of

15         Juszynski's physical limitations." *Juszynski v. Lina* 2008 WL 877977 (N.D. Ill.) at

16         7.

17   77.   LINA failed to give weight to the combination of disabling factors, although

18         explicitly mentioned in Urbina's appeal and counsel's letter following the Septmber

19         23, 2011 contact.

20   78.   There was never any dispute that Urbina suffered from DDD, radiculopathy, morbid

21         obesity, and a physically demanding job including the necessity of prolonged sitting

22         and lifting of heavy objects.

23   79.   LINA's claimed reliance on the absence of range-of-motion studies in or about

24         September 2010 is a ruse, bad faith seeking a justification for a denial of contracted

25         for benefits.

26   80.   LINA and its Dr. Mendez write: "Diagnostic studies such as x-rays or MRIs neither

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

9

*Urbina v. Life Ins Co of N. America, et al.*
CV New

1    support nor deny the presence of impairment because they don't measure it."

2    81.    LINA has rejected claims of disability because they did not include the type of

3    imaging studies which established Urbina's DDD, and objective studies which

4    prove Urbina's radiculopathy.

5    82.    In Urbina's case, Dr. Reifschneider reviewed diagnostic imaging studies together

6    with his own physical medical examinations to reach his opinion that Urbina was

7    disabled.

8    83.    LINA has functionally added a requirement not written into the insurance contract

9    or Plan document that, in spite of what imaging studies show and how they are

10    interpreted by physicians who personally perform contemporaneous medical

11    examinations, without contemporaneous range-of-motion measurements there is

12    insufficient proof of loss of function for DDD and radiculopathy to justify

13    disability.

14    84.    The essence of LINA's position, that the absence of explicit range-of-motion

15    studies is sufficient to overcome the combination of confirmed DDD,

16    spondylolisthesis, radiculopathy, Urbina's morbid obesity, and the physical

17    requirements of Urbina's occupation, is a lie.

18    85.    LINA has been determined in multiple instances to have breached its fiduciary-like

19    duties in ERISA claims.

20    86.    The California Department of Insurance in a Public Report of the Targeted Market

21    Conduct Examination ("Market Conduct Examination") of the Claims Practices of

22    Life Insurance Company of North America as of June 20, 2006 found multiple

23    violations in LINA's disability insurance claims handling.

24    87.    Exhibit 4 is the cover page of the Market Conduct Examination of Claims Practices

25    of LINA as of June 20, 2006.

26    88.    Exhibit 5 is a true copy of LINA's response for disability claims handling

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

10

Urbina v. Life Ins Co of N. America, et al.
CV New

comments by August 3, 2007 letter to the State of California Department of Insurance Market Conduct Examination.

89.    Violations described in the Market Conduct Examination are similar to the claims handling of Urbina's disability claim and appeal.  For instance, the LINA nurse consultants and medical personnel:

a.    Never addressed the disabling affect expected from DDD, radiculopathy, spondylolisthesis, and morbid obesity on a physically demanding job as held by Urbina;

b.    Assumed Urbina had no functional loss in spite of diagnosis including DDD, radiculopathy, morbid obesity, and the treating physician's limitation that Urbina could lift, carry, or push no more than 10 pounds; and

c.    Failed to give weight to the restrictions and limitations placed on Urbina by Dr. Reifschneider, and failed to accumulated rebuttal evidence it claimed was necessary by a FCE, IME, or other measurements that it did not find in Dr. Reifschneider's medical notes;

90.    LINA's toleration of bad faith handling of fiduciary type duties is further support for the conflict of interest and bias which LINA allows to influence its benefits determinations.

91.    The system of ERISA remedies where the claimant participants can never receive redress from an insurance company/claim administrator like LINA for the compensatory damages caused to a victimized insured operates as a factor where cynical claims handling has no disincentive.

92.    The system of ERISA remedies where the claimant participants can never receive redress from an insurance company/claim administrator like LINA for being punished with a jury verdict or punitive damages in favor of a victimized insured operates as a factor where cynical claims handling has no disincentive.

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

11

Urbina v. Life Ins Co of N. America, et al.
CV New

**COUNT I**

**DECLARATORY JUDGMENT**

93. Plaintiff incorporates the facts alleged in all previous paragraphs as if fully set forth herein.

94. LINA and all the Defendants acted with a conflict of interest in violation of their fiduciary-type interests to Urbina, a participant within the ERISA Plan.

95. LINA has a structural conflict of interest because, the more it refrains from paying benefits whether those benefits should be paid pursuant to the terms of the contract or not, the more money it retains for itself.

96. In addition to, the structural conflict of interest, LINA's conduct has been inflicted with a bias in favor of denial of Urbina's claim for benefits.

97. LINA created and failed to correct, a system in which medical personnel including vendor doctors are conflicted with the knowledge that the payor for their work favors denials and terminations of claims.

98. On information and belief, LINA retains a system of winks and nods to communicate reinforcement for medical personnel who tend to offer opinions which do not acknowledge a person's benefit triggering disability.

99. In instance after instance where LINA and its representative personnel or vendor contracts have been discredited by their bias in favor of non-payment, LINA has never taken serious action to remove the bias, or biased personnel, which infects its disability claims handling system.

100. Among the reasons to conclude that LINA has acted with bias against Urbina are:

   a. Ignoring the clearly and oft-repeated opinion of treating physician Reifschneider that Urbina was disabled;

   b. Ignoring, or failing to give proper weight to the imaging and objective

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

12

*Urbina v. Life Ins Co of N. America, et al.*
CV New

1    studies, which were used by Dr. Reifschneider to help form his opinions

2    of disability;

3    c.    Fabricating new terms for benefit requirements which overturn the clearly

4    expressed opinions of a capable treating physician;

5    d.    Ignoring the reasons which prove the inability of Urbina to perform his

6    occupation for medical reasons including spondylolisthesis,

7    radiculopathy, DDD, and morbid obesity; and

8    e.    For ignoring the safety requirements of the occupation which requires

9    wearing a uniform, carrying a firearm, and being able to use a firearm

10    safely during highly stressful and potential emergency situations.

11    101.    The facts warrant an Order declaring that Urbina is entitled to back benefits,

12    continuing benefits, waiver of premium, attorneys' fees, costs, and all other

13    relief deemed just under the premises.

14    WHEREFORE this Court should enter its order declaring that Urbina is entitled

15    to back benefits with interest, continuing benefits, attorneys' fees, costs, and all other

16    relief applicable under law or equity.

17    RESPECTFULLY SUBMITTED January 6, 2012.

18    WATERFALL, ECONOMIDIS, CALDWELL,
        HANSHAW & VILLAMANA, P.C.

19

20    By s/Barry Kirschner
        Attorneys for Plaintiff

21

22

23

24

25

26

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CTR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

13

Urbina v. Life Ins Co of N. America, et al.
CV New

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that on January 6, 2012, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing.

5

6  Paper Courtesy Copy to be delivered through E-Z Messenger to assigned judge

7

8  <u>s/Glades Guisinger</u>

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WATERFALL, ECONOMIDIS
5210 E WILLIAMS CIR #800
TUCSON, AZ 85711
520-745-7810

BK/gg/1/6/12
Complaint FNL.wpd

14

*Urbina v. Life Ins Co of N. America, et al.*
CV New